**In re Hurshel Ray MOTES, Debtor.**

**Bankruptcy No. 93–10721–399.**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

March 30, 1994.

Paul H. Berens, Cape Girardeau, MO, for Bank.

Rice P. Burns, Jr., Sikeston, MO, for debtor.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

### MEMORANDUM OPINION AND ORDER
BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This Chapter 13 case concerns the extent of the codebtor stay found in Section 1301(c)(1) of the Bankruptcy Code. 11 U.S.C. § 101 *et seq.*[1]

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the

Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(G), and 157(b)(2)(O).

### STATEMENT OF FACTS

The facts in this case are not in dispute. Hurshel Ray Motes, ("Debtor"), filed a Chapter 13 bankruptcy petition scheduling a mobile home as one of the assets of his estate. The Debtor together with his now-estranged wife, Dorothy M. Motes, ("Wife"), borrowed money for the purchase of the mobile home and in return granted a security interest in the home in favor of the Movant, Citizens Bank & Trust Company, ("Bank"). The Debtor and his Wife are currently involved in divorce proceedings and it was the Debtor's testimony that he no longer lives in the mobile home.

The Bank filed this present Motion seeking relief from § 1301's codebtor stay in order to collect its debt from the Wife. This Court took the Motion under submission for one week in order to obtain from the parties their post hearing briefs and to gain a more detailed understanding of § 1301(c)(1).

### DISCUSSION

#### I. The Codebtor Stay and the Bank's Request for Relief.

The filing of a Chapter 13 bankruptcy petition invokes not only the automatic stay of § 362, but also invokes a stay against any civil action or other act by a creditor to collect a consumer debt from an individual who has guaranteed or secured a liability of the debtor or who is otherwise liable on a debt with the debtor. § 1301(a). Under § 1301(c), a creditor may obtain relief from this codebtor stay in any one of three circumstances.

In this case, it is not disputed that the loan to purchase the mobile home is a "consumer debt" as defined by § 101(8). The crux of the dispute rests with the Bank's attempt to obtain relief from the codebtor stay under § 1301(c)(1). This subsection reads:

---

1. All section references are to Title 11 unless specified otherwise.

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the [codebtor] stay with respect to a creditor, to the extent that—

> (1) as between the debtor and the [co-debtor], such [codebtor] received the consideration for the claim held by such creditor; ...

The Bank contends that through the divorce proceedings, the Wife will receive the mobile home. Under the Bank's reading of § 1301(c)(1), this Court should lift the stay to the extent that the Wife actually receives the mobile home from the loan proceeds.

The Debtor maintains that § 1301(c)(1) is inapplicable in this present situation. Under the Debtor's reading, § 1301(c)(1) applies only to the extent that the codebtor is the exclusive recipient of the consideration and because the consideration for the loan was jointly received by the Debtor and his Wife, relief from the codebtor stay should be denied.

## II. Analysis of § 1301(c)(1) and Relevant Case Law.

The underlying purpose of § 1301 is frequently cited and well established, however, the legislative history is unquestionably confusing. Several courts from other jurisdictions have examined this identical issue, and their understanding of § 1301(c)(1) is uniform and readily comports with the intended function of § 1301.

The avowed purpose of § 1301's stay of actions against the codebtor is to "protect a chapter 13 debtor from indirect pressure from a creditor exerted through his friends or relatives, to favor or prefer that creditor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 121 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6082.[2] However, there are situations where

a creditor is permitted to collect the debt because the indirect pressure contemplated by Congress does not exist. Such would be the case where the "nondebtor party actually received the consideration for the claim held by the creditor." H.R.Rep. No. 595, at 426; 1978 U.S.C.C.A.N. 5787, 6382; *see also In re Jones,* 106 B.R. 33, 35 (Bankr.W.D.N.Y. 1989).[3]

While the purpose behind the codebtor stay seems clear, what is vague is the extent to which the nondebtor must receive the consideration. In this case, the Debtor and his Wife each received a portion of the consideration for the claim held by the Bank. The Bank only seeks relief from the codebtor stay to the extent that the Wife received consideration. Two disparate statements of Congress emphasize the confusion.

The House Report states that, "[t]he court must also grant relief *to the extent* that the debtor was really the co-debtor in the transaction ..." H.R.Rep. No. 595, 95th Cong., 1st Sess. 426 (1977) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6382. However, Congressional Record Statements declare, "[s]ection 1301(c)(1) indicates that a basis for lifting the stay is that the debtor did not receive consideration for the claim by the creditor, or in other words, the debtor is really the 'co-debtor'" 124 Cong.Rec. H11106 (September 28, 1978); S17423 (October 6, 1978); *cited in In re Rhodes,* 85 B.R. 64, 65 (Bankr.N.D.Ill.1988).

This Court's review of relevant case law finds that this second approach is the prevailing view. Three cases have involved facts similar to this case. In *In re Rhodes,* 85 B.R. 64, 65 (Bankr.N.D.Ill.1988); *In re Fagan,* 26 B.R. 212 (Bankr.W.D.Ky.1982); and *In re Henson,* 12 B.R. 82 (Bankr.S.D.Ohio 1981), a debtor and spouse jointly borrowed

---

**2.** For example, a debtor, prior to filing bankrupt-.cy, purchases an automobile for his own use. A bank loans debtor the purchase money, but requires the debtor's father to cosign the loan. When debtor defaults on the loan and files for relief under Chapter 13, the bank may seek repayment from debtor's father. Certainly the pressure put on the father is, in reality, an attempt to collect from the debtor. The father may then pressure the debtor to prefer the bank over the other creditors who will be paid through the

Chapter 13 plan. Section 1301 was designed to prevent this very situation.

**3.** For example, debtor and father cosign a loan from bank to purchase furniture for *father's* house. After father makes 6 monthly payments, debtor files a petition under Chapter 13. The bank may employ § 1301(c)(1) to seek relief from the codebtor stay to continue to collect the debt from father because father was the one who actually received the consideration.

money and were later divorced. As there was no evidence that any spouse received the consideration for the loan for their sole benefit, each court denied relief under § 1301(c)(1). This is true even when a post-loan (prepetition) divorce vests title in only the non-debtor spouse. *Henson* 12 B.R. at 84.

 This Court is in agreement with these readings of § 1301(c)(1) and will lift the codebtor stay only in those situations where the debtor did not receive any consideration for the loan. In doing so, this Court is allegiant to the intended purpose of § 1301. Congress enacted the codebtor stay to protect Chapter 13 debtors from indirect pressure by creditors and any attempt to apportion the consideration between the debtor and the non-debtor necessarily results in the type of indirect pressure which Congress sought to prohibit.

### CONCLUSION

For the reasons stated above, it is

ORDERED that Citizens Bank and Trust Companies Motion for Relief from the Co-debtor Stay of § 1301 is DENIED.